ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

PATRICK JOSEPH MCCOY, §
Plaintiff. §
§
VS. § CIVIL ACTION NO. 4:09-CV-517-A
§
MICHAEL J. ASTRUE, §
Commissioner of the Social Security §
Administration, §
Defendant. §

**FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Patrick Joseph McCoy ("McCoy"), filed an application for Title II disability insurance benefits ("DIB") on December 21, 2005, alleging a disability onset date of February 26, 2005. (Transcript ("Tr.") 141-48, 169.)[1] After that application was denied by the Social Security Administration on the initial and appeals levels of administrative review, McCoy timely requested a hearing before an administrative law judge ("ALJ"). A hearing was held in Fort Worth, Texas before ALJ James A. Wendland on July 8, 2008. (Tr. 42-83.)

In his December 2005 application, McCoy claimed disability due to a number of impairments including failed back syndrome, hypothyroidism, burning and numbing in his legs, and chronic back and leg pain. (Tr. 169.) On August 19, 2008, the ALJ issued a decision finding that he was not disabled. (Tr. 27-41.) On May 26, 2009, the Appeals Council denied McCoy's request for review.

---

[1] The relevant time period for McCoy's application is February 26, 2005, his alleged onset date, through March 31, 2006, his last insured date. (Tr. 27.) Thus, McCoy must establish disability on or before March 31, 2006 in order to be entitled to a period of disability or DIB. *See* 20 C.F.R. § 404.131.

(Tr. 5-7.) McCoy subsequently filed the instant action in federal court on September 1, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232,

236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

## III. ISSUES

McCoy raises the following issues:

1. Whether the ALJ applied the correct legal standard in weighing the treating source opinions;

2. Whether the ALJ properly evaluated McCoy's credibility; and

3. Whether the ALJ properly relied on vocational expert testimony to find that McCoy can perform work that exists in significant numbers in the national economy.

Plaintiff's Brief ("Pl. Br.") at 1.

## IV. ADMINISTRATIVE RECORD

A. <u>Background and Vocational History</u>

McCoy was born on July 4, 1961. (Tr. 155.) He has a high school degree, and he completed one year of college. (Tr. 174.) His past relevant work included jobs as a physical fitness instructor and as a material handler. (Tr. 39, 158.) McCoy had not engaged in substantial gainful activity from his alleged onset date through the date of the ALJ's decision. (Tr. 29, citing 20 C.F.R. § 404.1520(b) and 404.1571 *et seq.*)

B. Administrative Hearing

At his hearing before the ALJ, McCoy appeared with a non-attorney representative and testified on his own behalf. (Tr. 44-72.) Medical Expert ("ME") John Simonds ("Simonds") and vocational expert ("VE") Todd Harden ("Harden") also testified. (*Id.*)

C. The ALJ's Decision

In entering his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 29-41.); 20 C.F.R. § 416.920(b). At step one, the ALJ found that McCoy last met the insured status requirements of the Social Security Act on March 31, 2006. (Tr. 31.) He also found that he had not engaged in substantial gainful activity since November 13, 2002. (*Id.*, citing 20 C.F.R. § 416.1520(b).) At step two, the ALJ determined as follows:

> Through the date last insured, [McCoy] had the following severe impairments: status post lumbar surgery x2, obesity, and status post right shoulder surgery (20 CFR 404.1520(c).

(Tr. 29.)

The ALJ continued to step three, finding that McCoy did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (*Id.*, citing 20 C.F.R. Part 404, Subpart P, Appendix 1; §§ 404.1520(d), 404.1525 and 404.1526.) The ALJ stated that he had specifically considered the listed impairments that address the musculoskeletal system, and that he had considered McCoy's obesity in accordance with the provisions set out in Social Security Ruling ("SSR") 02-1p. (*Id.*) The ALJ also determined that McCoy's subjective complaints were not fully credible. (Tr. 37.) The ALJ formulated a residual functional capacity ("RFC") for McCoy as follows:

> Through the date last insured, [McCoy] had the residual functioning capacity to perform sedentary work as defined in 20 CFR 404.1567(a) where he was not required to: stoop, balance, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; climb scaffolds, ladders, and ropes; sit without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks during the workday; work above shoulder level with the upper right extremity; handle or finger objects with the right upper extremity more than

occasionally; or work at unguarded heights or near unguarded hazardous mechanical equipment. (Tr. 35.)

At step four, the ALJ found that McCoy was unable to perform his past relevant work. (Tr. 39, citing 20 C.F.R. § 404.1565.) Then at step five, the ALJ relied on the testimony of the VE along with McCoy's RFC, age, education and work experience to determine that McCoy was not disabled because he could perform work that existed in significant numbers in the national economy. (Tr. 39- 40.)

## V. DISCUSSION

### A. Whether the ALJ applied the correct legal standard in weighing the treating source opinions

McCoy first claims that the ALJ erred when he failed to give controlling weight to the opinions of various doctors he has identified as treating physicians, including John Milani, M.D. ("Milani"), Robert G. Viere, M.D. ("Viere"), Yong D. Chang, M.D. ("Chang"), and Keith Meister, M.D. ("Meister"). (Pl. Br. at 19-25.) The Commissioner, on the other hand, argues that the ALJ properly considered their opinions and determined that they were not entitled to any weight. (Defendant's Brief ("Def. Br.") at 4; Tr. 38-39.)[2]

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). But the ultimate determination of disability remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise supported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237; *see also* 20 C.F.R. §

---

[2] McCoy also argues in a footnote that the ALJ was obligated to contact Jacob Rosenstein, M.D. ("Rosenstein") to clarify the reason why McCoy's "disability papers," referred to in Rosenstein's treatment notes, were never completed. (Pl. Br. at 21.) This assertion is without merit as there was sufficient evidence for the ALJ to determine McCoy's disability. *See Newton*, 209 F.3d at 453.

FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER    (Civil Action No. 4:09-CV-517-A)                                                    Page 5

404.1527(e). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, 209 F.3d 453 (5th Cir. 2000), the Fifth Circuit Court of Appeals held that absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must evaluate: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* SSR 96-2p, 1996 WL 374188, at *2-4 (SSA July 2, 1996); 20 C.F.R. § 416.927(d). *Newton* requires only that the ALJ "consider" each of the factors set forth in section 404.1527(d) and articulate good reasons for its decision to accept or reject the treating physician's opinion. "The [ALJ] need not recite each factor as a litany in every case." *Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *accord Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 n.1 (N.D. Tex. Nov. 12, 2008).[3]

  1.  Milani

First, as to the opinion of Milani, McCoy argues that the ALJ erroneously rejected the opinion of Milani, a board-certified orthopedic surgeon. (Pl. Br. at 21-22.) In his analysis, the ALJ

---

[3] McCoy also includes a paragraph within this section in which he criticizes the ALJ for not requesting records from various sources. (Pl. Br. at 25.) Arguing that the ALJ should have included his depression as a severe impairment at step two, McCoy criticizes the ALJ for failing to request psychiatric and psychotherapy treatment records, even though Rosenstein indicated that McCoy had undergone a psychological evaluation on one occasion, and indicated that McCoy was in regular therapy on another occasion. Rosenstein also stated that McCoy was waiting to be referred to a psychiatrist for medication management. (Tr. 350.) The Commissioner argues that McCoy has not adequately briefed this issue because he failed to point to any evidence indicating that his depression constituted a severe impairment. (Def. Br. at 13; Pl. Br. at 25-26.) The Court agrees. Moreover, there are no psychotherapy or psychiatric reports in the record, nor is there any evidence that McCoy was ever hospitalized. The only evidence consists of McCoy's self reports and notations regarding his psychological treatment from doctors who were treating other conditions. A severe impairment must be corroborated, at least in part, by objective medical evidence. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); 20 C.F.R. § 404.1528(a).

specified that he gave "no weight" to Milani's opinion of September 28, 2006, which essentially stated that McCoy's impairment satisfied the requirements of Listing 1.04. (Tr. 38, 309-10.) In coming to his decision, the ALJ focused on the fact that Milani did not believe McCoy required an assistive device for ambulation, nor did he ever prescribe one. (Tr. 38, 310.) The ALJ also noted that Milani's opinion was inconsistent with his own treatment notes. (Tr. 38.) In August 2005, Milani encouraged McCoy to consider job retraining or to "at least look for a light-duty job at which he could perhaps pace himself and alternate his sitting and standing postures, for instance." (Tr. 215.) The ALJ also found that McCoy's own testimony at his hearing regarding his aggressive weight loss program contradicted Milani's opinion. (Tr. 38, 58.) McCoy testified that in 2006 he was using a stair master for an hour and a half each day. (Tr. 59-60.)

Moreover, Milani's opinion is contradicted by other evidence in the record. On March 9, 2006, McCoy underwent a consultative examination by Raymond R. Westbrook, D.O. ("Westbrook"). (Tr. 245-47.) Westbrook's physical examination of McCoy revealed that he had a normal gait, normal range of motion in his C-spine and bilateral shoulders, elbows, wrists and hands with good strength, the ability to squat and stand without difficulty, and the ability to rise from a seated position without difficulty. (Tr. 246.) He was also neurologically intact with intact sensation. (*Id.*) Westbrook noted that McCoy had chronic low back pain and a history of fusion and that, per McCoy's own report, he was on replacement therapy to treat his hypothyroidism, which was stable. (Tr. 247.) And Milani's opinion is likewise contradicted by the opinion of state agency medical consultant Frederick Cremona, M.D. ("Cremona"). (Tr. 261-68.) On August 18, 2006, Cremona found that McCoy could occasionally lift and/or carry 20 pounds, could frequently lift and/or carry 10 pounds, could stand and/or walk about 6 hours in an 8-hour work day, could push and/or pull without limitation, could occasionally climb, stoop, or crouch, and could frequently balance, kneel and crawl. (Tr. 261-63.) Cremona found that McCoy had no manipulative limitations, visual limitations, communicative limitations, or environmental limitations. (Tr. 265.) He also concluded that "[t]he alleged limitations caused by [McCoy's] symptoms are not fully

supported by EOR [evidence on record]." (Tr. 266.) Finally, the opinion of ME Simonds, given at McCoy's hearing, contradicts Milani's opinion. (Tr. 76.) At the hearing, Simonds testified that McCoy was able to perform light work in 2006 and that RFC decreased to sedentary work by June of 2007. (Tr. 76.) This opinion contradicts Milani's opinion of September 28, 2006 that McCoy had significant and persistent disorganization of motor functioning in two extremities resulting in sustained disturbance or gross dexterous movement or gait and station. (Tr. 310.) The ALJ specifically noted that he accorded "great weight" to the opinions of Simonds. (Tr. 38.)

The Court finds that the ALJ appropriately rejected Milani's opinions because they were inconsistent with and unsupported by other medical records. 20 C.F.R. § 404.1527(d); *see also See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citations omitted) (holding that an ALJ is free to reject a treating physician's opinions when the medical evidence supports a contrary conclusion).

2. Meister

Next, McCoy complains that the ALJ inappropriately gave "no weight" to the opinion of Meister, another board-certified orthopedic surgeon who McCoy claims is a treating physician. (Tr. 23.) Meister treated McCoy for right shoulder pain. (Tr. 333-38, 376-77.) Meister opined that McCoy was severely limited in his ability to cope with stress at work and that his impairment or treatment would cause him to miss work three times a month. (Tr. 377.) He also found that McCoy's shoulder pain was frequently severe enough to interfere with his attention and concentration. (Tr. 377.)

According to the Commissioner in his response, the record does not contain sufficient evidence of treatment for Meister to qualify as a treating physician as there are only two treatment records, comprised of a medical history and treatment notes from January 20, 2007 and a questionnaire completed on April 20, 2007. (Defendant's Brief ("Def. Br.") at 11; Tr. 333-38, 376-77.) The Commissioner argues that a physician such as Meister with "a history of only intermittent, infrequent treatment arguably lacks the detailed, longitudinal perspective of a claimant's impairment

that would qualify him as a treating physician." (Def. Br. at 11, citing 20 C.F.R. § 404.1527(d)(2).) In *Hernandez v. Heckler*, 704 F.2d 857, 860-61 (5th Cir. 1983), the Fifth Circuit Court of Appeals affirmed an ALJ's decision rejecting a treating physician-patient relationship under similar facts. *Id.* In that case, the physician had only seen the claimant twice in a 17-month period and was "no more familiar with [the claimant's] injuries, course of treatment, and responses over a considerable length of time than were other physicians." *Id.* In this case, the Court finds that Meister did not qualify as a treating source, and the ALJ was thus not required to give controlling weight to his opinion.

Nonetheless, the ALJ considered Meister's opinion and properly determined that it was not entitled to any weight. First, in analyzing Meister's opinion, the ALJ noted that it was given after the relevant time period. (Tr. 39.) The burden is on the claimant to establish his disability before the expiration of his last insured date. *See Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981). And evidence demonstrating degeneration of an appellant's condition after the expiration of his insured date is not relevant. *See, e.g., Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir.1995). Second, the opinion of Westbrook, the consultative examiner, discussed previously, contradicts Meister's opinion, as that examination revealed that McCoy had a normal range of motion in both shoulders. (Tr. 246-47.) Third, the opinion of Cremona, the state agency physician, also contradicts Meister's opinion in that Cremona found McCoy's abilities consistent with the ability to perform light work. (Tr. 262-63.) Finally, ME Simond's opinion contradicts Meister's in that Simond found McCoy able to perform sedentary work in 2007. (Tr. 76.) The ALJ properly considered Meister's opinion in light of the evidence in the record, taking into consideration the relationship between McCoy and Meister and the supportability and consistency of Meister's opinion in the context of the record as a whole. (Tr. 39.) Ultimately, the ALJ properly rejected Meister's April 30, 2007 physician statement because it was inconsistent with the record as a whole and because it was outside the relevant time period. The Court concludes that the ALJ did not apply the wrong legal standard in evaluating Meister's opinion and remand is not required.

### 3. Viere

Next, McCoy argues that the ALJ inappropriately gave "no weight" to Viere's opinion, given in May 2006, that McCoy was unable to work. (Pl. Br. 23-24; Tr. 38.) Viere specifically noted that he was making that assessment per McCoy's primary treating physician, Bryan Drazner, M.D. ("Drazner"). (Tr. 287.) In analyzing Viere's opinion, the ALJ stated that he was giving Viere's opinion "no weight" because it was based on hearsay and because it was not supported by Viere's own findings. (Tr. 38.) While McCoy correctly points out that the Federal Rules of Evidence do not apply in social security cases, that was not the only basis upon which the ALJ rejected Viere's opinion. (Pl. Br. at 24; Tr. 38.) The ALJ looked at the objective findings of Viere and determined that those did not support his opinion. (Tr. 38.) Moreover, the ultimate determination on whether a claimant is totally disabled is an issue reserved to the Commissioner. An ALJ must consider and weigh all medical opinions in the record, even opinions on issues like RFC that are reserved to the Commissioner. *Price v. Astrue*, No. 4:07-CV-435-Y, 572 F.Supp.2d 703, 710 (N.D. Tex. 2008); 20 C.F.R. § 404.1527(e)(2), 416.927(e)(2). But a treating physician's opinion that a claimant is totally disabled or unable to work has "no special significance." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also* 20 C.F.R. § 404.1527(e)(1). The determination of disability always remains the province of the ALJ. *Id.* And an ALJ may reject the opinion of any physician regarding a claimant's disability status when the evidence supports a contrary conclusion. *See, e.g., Martinez*, 64 F.3d at 175. The Court finds that the ALJ did not improperly discount the opinion of Viere.

### 4. Chang

Finally, McCoy argues that the ALJ erred in giving "no weight" to the opinion of Chang, McCoy's primary treating physician. (Pl. Br. at 26-27; Tr. 38-39.) In his analysis, the ALJ noted that in October 2006, Chang addressed McCoy's non-musculoskeletal impairments and opined that McCoy's thyroid was unregulated. (Tr. 38-39, 312.) The ALJ found that this opinion was inconsistent with the record evidence that McCoy lost over 100 pounds. (*Id.*) Moreover, the ALJ noted Chang's opinion that McCoy was unable to work was inconsistent with various other evidence

FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER    (Civil Action No. 4:09-CV-517-A)                                     Page 10

in the record. (Tr. 38-39.) An ALJ is free to reject the opinion of any physician when the evidence in the record supports a contrary conclusion. *Martinez*, 64 F.3d at 176. The Court finds that the ALJ did not improperly discount the opinion of Chang.

B.  Whether the ALJ properly evaluated McCoy's credibility

McCoy's second point of error is that the ALJ failed to properly evaluate his credibility. (Pl. Br. at 27-29.) He complains, *inter alia*, that the ALJ's "marginal credibility analysis is insufficient" under SSR 96-7p, which provides direction for the proper assessment of the credibility of an individual's statements about his symptoms for purposes of evaluating his disability claim. (Pl. Br. at 27-28.)

An ALJ is not required to give subjective evidence precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (citations omitted). Rather, the ALJ's evaluation of the credibility of an individual's complaints of pain is used to resolve conflicts between the subjective evidence and the medical evidence. *Id.* The record is clear that the ALJ considered a number of factors, including: (1) inconsistencies in the medical evidence, (2) McCoy's daily activities, (3) his course of treatment, and (4) his testimony at his hearing in determining that McCoy's subjective complaints were not credible to the extent he claimed. (Tr. 35-39.) Thus, he clearly indicated the credibility choices he made and the basis he used for making those choices. *See Hollis*, 837 F.2d 1378, 1385 (5th Cir. 1988); *see also* 20 C.F.R. § 404.1529 (An ALJ will consider the extent to which claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence); SSR 96-7p (discussing factors used in credibility determination).

In *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983), the Fifth Circuit Court of Appeals held that "[t]he mere presence of an impairment is not disabling per se." In *Heckler*, the Court of Appeals noted that the Secretary did not find that the claimant did not have an impairment, but rather that "the degree of impairment evidenced by the objective medical finding did not impose functional restrictions of disabling severity on [her] activities." *Id.* This is precisely the situation in the instant

case. The ALJ found that McCoy had severe impairments; in fact he acknowledged that McCoy might have some pain associated with that condition. (Tr. 29-39.) But the ALJ further found that the medical evidence showed that McCoy's severe impairments were not totally disabling. (Tr. 29-40.) And there is substantial evidence in the record to support his choice to credit the medical records over McCoy's subjective testimony, including multiple physical examinations that revealed full muscle strength in his upper and lower extremities, normal gait, normal pulses in his lower extremities, negative straight leg raise, no stenosis, and results indicating that he was neurologically intact with no sensory deficits. (Tr. 246-47, 288, 296, 349.) *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) ("The absence in the record of objective factors indicating the existence of severe pain, such as persistent significant limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition justifies the conclusions of the administrative law judge.")

Additionally, the ALJ considered McCoy's daily activities, noting that McCoy testified that he cooked, drove, and walked on the stair master for an hour and a half every day. (Tr. 37, 58, 64-65.) Thus the ALJ's determination that McCoy's daily activities discredited his allegations of disabling impairments is supported by substantial evidence. *See, e.g., Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (noting that the claimant engaged in a variety of activities, including bathing herself, preparing food, and operating a vehicle). The Court finds that the ALJ properly evaluated McCoy's credibility according to the factors set forth in SSR 96-7p.

3. <u>Whether the ALJ properly relied on vocational expert testimony to find that McCoy can perform work that exists in significant numbers in the national economy.</u>

McCoy's final argument is that the ALJ improperly relied on the testimony of the VE to find that McCoy can perform work that exists in significant numbers in the national economy, including work as a call out operator and as an information clerk. (Pl. Br. at 29-30; Tr. 39-40.) McCoy claims that although the hypothetical presented by the ALJ to the VE incorporated all of the limitations recognized by the ALJ, it did not properly include all of McCoy's limitations because the ALJ's determination of McCoy's RFC was flawed. (Pl. Br. at 29.) According to McCoy, the ALJ

inappropriately failed to include limitations found by Milani, Viere, Drazner, Meister, Rosenstein and Chang in his RFC and hypothetical. (Pl. Br. at 29-30.) The Court finds, however, that the ALJ appropriately incorporated all of the limitations supported by the evidence and which were recognized by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Thus remand is not appropriate.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. Thus the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation is **December 30, 2010**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **December 30, 2010** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**December 16, 2010**

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE